505 A.2d 1074

Gary Liesner, D.D.S., Petitioner *v.* Commonwealth of Pennsylvania, State Dental Council and Examining Board, Respondent.

Argued December 12, 1985, before Judges CRAIG, BARRY, and PALLADINO, sitting as a panel of three.

*Michael B. Tolcott,* with him, *Gilbert B. Abramson, Philip L. Blackman* and *Sharon M. Friel, Abramson, Cogan, Kogan, Freedman & Blackman, P.C.,* for petitioner.

*Gwendolyn T. Mosley,* Deputy Attorney General, with her, *Allen C. Warshaw,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, March 5, 1986:

This is an appeal by Gary Liesner (Petitioner) from an order of the State Dental Council and Examining Board (Board) which suspended Petitioner's license to practice dentistry for a period of six months. We affirm.

On November 15, 1982, Petitioner pled *nolo contendere* to twenty-four counts of violating Sections 3(a)(12) and 3(c)(2) of the Fraud and Abuse Control Law.[1] Thereafter, on June 6, 1983, the Board served Petitioner with a Citation and Notice of Hearing which charged Petitioner with having violated Section 3 of The Dental Law[2] by reason of being guilty

---

[1] Act of July 10, 1980, P.L. 493, *as amended*, 62 P.S. §1407 (a)(12) and (c)(2). Section 1407 provides, in pertinent part:

(a) it shall be unlawful for any person to:

. . .

(12) Enter into an agreement, combination or conspiracy to obtain or aid another to obtain reimbursement or payments for which there is not entitlement.

. . .

(c)(2) Providers who are terminated from participation in the medical assistance program for any reason shall be prohibited from owning, arranging for, rendering or ordering any service for medical assistance recipients during the period of termination. In addition, such provider may not receive, during the period of termination, reimbursement in the form of direct payments from the department or indirect payments of medical assistance funds in the form of salary, shared fees, contracts, kickbacks or rebates from or through any participating provider.

[2] Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. §122. Section 3 provides, in pertinent part:

The State Dental Council and Examining Board . . . shall have power:

. . .

(i) To suspend and revoke, by majority action of the entire board, the license or registration of any licensee who has been guilty of a crime or misdemeanor involving moral turpitude; or of a violation of any of the provisions of this

of a crime or misdemeanor involving moral turpitude, engaging in fraudulent or unlawful practices, and by engaging in unprofessional conduct. After a full hearing, the Board, by order dated October 26, 1984, found that Petitioner had committed the violations of The Dental Law with which he had been charged and suspended his license to practice dentistry for six months. It is from this order that Petitioner appeals.

Petitioner's primary argument is that the Board erred as a matter of law in concluding that Petitioner was guilty of a crime of moral turpitude. It is Petitioner's contention that violations of Section 1407 (a)(12) and (c)(2) of the Fraud and Abuse Control Law are not crimes of moral turpitude. We disagree.

As a general rule, all crimes of which fraud is an element are looked upon as involving moral turpitude. . . . '[M]oral turpitude' has also been frequently defined as 'anything done knowingly contrary to justice, *honesty,* or good morals.'

*Moretti v. State Board of Pharmacy,* 2 Pa. Commonwealth Ct. 121, 125-26, 277 A.2d 516, 518 (1971) (citations omitted) (emphasis in the original).

The facts of this case, as found by the Board and supported by substantial evidence in the record,[3] indi-

act; or of fraudulent or unlawful practices, or fraudulent, misleading or deceptive representations; or of unprofessional conduct, detrimental or dangerous to the public health, safety, morals or welfare;

. . .

[3] The Board's findings are supported not only by Petitioner's admitted plea of *nolo contendere* to the criminal charges, but also by documentary and testimonial evidence produced at the hearing before the Board.

We note that although the plea of *nolo contendere* is admissible as evidence of guilt, it is not conclusive. *Eisenberg v. Department of Public Welfare,* 86 Pa. Commonwealth Ct. 358, 485 A.2d 511 (1984). In the case at bar, however, Petitioner was afforded

cate that Petitioner, after being terminated from participation in the Pennsylvania Medical Assistance Program, engaged in a deliberate and illegal course of conduct to enable him to continue receiving the benefits of the Medical Assistance Program to which he was not entitled. Specifically, the Board found that Petitioner hired other dentists to perform dental work on Petitioner's Medical Assistance patients, for which Petitioner would share in the reimbursement from the Department of Public Welfare. Additionally, Petitioner would himself perform dental work on Medical Assistance patients and then submit reimbursement vouchers in the name of another dentist. These practices are fraudulent, illegal, unprofessional and involve moral turpitude.

Accordingly, the order of the Board is affirmed.[4]

ORDER

AND Now, March 5, 1986, the order of the State Dental Council and Examining Board, No. 81-DE-565, dated October 26, 1984, is affirmed.

PER CURIAM ORDER

AND Now, May 1, 1986, the Application of Gary Liesner, D.D.S., for Stay and/or Supersedeas is denied.

---

ample opportunity to offer rebuttal evidence. The Board concluded that Petitioner's offered justifications and explanations were not credible. Credibility of witnesses is a matter which is within the sole province of the Board as trier of fact. *Oppenheim v. State Dental Council and Examining Board*, 74 Pa. Commonwealth Ct. 200, 459 A.2d 1308 (1983).

[4] We have examined Petitioner's allegations of procedural error, specifically that the Board erred in (1) restricting cross-examination of a witness, (2) refusing to allow the content of a telephone call into evidence, and (3) commingling of the Board's prosecutorial and adjudicatory functions. Our review of the record leads us to conclude that the Board's evidentiary rulings were proper and that it did not commingle its functions.